UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRUCE JOHN RHIMER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:16-CV-0227-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 20. Attorney Dana Chris Madsen represents Bruce John Rhimer (Plaintiff); Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On June 18, 2012, Plaintiff protectively filed applications for disability insurance benefits and social security disability benefits, alleging disability since October 17, 2003, due to bicycle injury; neck, back and foot problems; mental

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

health; and left hand injury.  Tr. 177, 184, 221.  Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Caroline Siderius held a hearing on November 13, 2014, Tr. 37-72, and issued an unfavorable decision on December 17, 2014, Tr. 19-32.  The Appeals Council denied review on April 29, 2016.  Tr. 1-6.  The ALJ's December 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 24, 2016.  ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on January 22, 1963, and was 40 years old on the alleged onset date, October 17, 2003.  Tr. 75.  He completed high school and two years of college.  Tr. 222.  Plaintiff's disability report indicates he stopped working on December 31, 2008, because he "could not stay focused and on task, plus the economy caused lay offs."  Tr. 221.  Plaintiff testified he performed some construction type work through 2009, was unemployed from 2009 until a bicycle accident in 2012,[1] and has performed no work since the 2012 accident.  Tr. 51-52.

Plaintiff indicated he suffers from back, shoulder and neck pain as a result of the 2012 bicycle accident.  Tr. 58-61.  He also testified he does not like to leave his house very often because he is now fearful of intersections.  Tr. 57.

---

[1] Plaintiff was involved in an auto versus bicycle accident in March 2012.  Plaintiff hit his head on the windshield of the vehicle, was launched into the air, and landed on his head.  Tr. 327.  He sustained multiple injuries as a result of the accident, including closed head trauma, right frontal scalp laceration, left temporal hemorrhagic contusion, and a cervical spine fracture at C7.  Tr. 327.

Plaintiff stated he additionally fell down some stairs in March of 2014 and broke his right hip. Tr. 62. He indicated the hip injury made it painful to walk over two blocks or climb more than two flights of stairs. Tr. 62. He stated he could stand for only an hour, sit for an hour, and lift a maximum of 10 pounds. Tr. 62-63.

When asked about depression and anxiety, Plaintiff stated he would like to say he did not have depression, but he does. Tr. 66. He did not elaborate other than to indicate there were a lot of things related to the injury caused by the bicycle accident, including no longer being actively involved with sports or riding his bicycle. Tr. 66. He did not mention anxiety or discuss any symptoms of depression or anxiety. Tr. 66.

Plaintiff testified he did not feel he was able to work because he would not be able to get up on time, be on time at the job location, or remember job instructions. Tr. 55. He further stated he would be slow to complete job tasks. Tr. 56, 65.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the

ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On December 17, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 17, 2003. Tr. 21. At step two, the ALJ determined Plaintiff had the following severe impairments: cognitive disorder

due to head trauma, cervical spine fracture at C7, and right acetabular fracture. Tr. 22. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 22.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work with the following limitations: he is able to lift 20 pounds occasionally and 10 pounds frequently, and he is able to push and pull with the upper extremities up to these weight limits; he needs to avoid overhead reaching bilaterally; he is able to sit for six hours and stand/walk for six hours in an eight hour workday; he needs to be able to change positions once per hour; he is not able to climb ladders, ropes, or scaffolds but can occasionally climb stairs and ramps; he needs to avoid concentrated exposure to vibrations, work at unprotected heights, and loud noises; he can perform simple and repetitive well-learned tasks up to three steps; he can have ordinary production requirements; and he can have occasional brief contact with coworkers and the general public. Tr. 23.

At step four, the ALJ determined Plaintiff could not perform his past relevant work as a general laborer and painter helper. Tr. 30. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of office cleaner I and mail clerk. Tr. 31-32. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 17, 2003, the alleged onset date, through the date of the ALJ's decision, December 17, 2014. Tr. 32

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards. Plaintiff contends the ALJ erred in this case by (1) failing to give appropriate weight to the examining opinion of Frank Rosekrans, Ph.D.; (2) failing to find Plaintiff's anxiety and depression were severe impairments at step two of the sequential evaluation process; (3) relying on vocational expert testimony that was based on an incomplete hypothetical; and (4) finding Plaintiff was limited to light exertion level work, not sedentary. ECF No. 15 at 10-17.

## DISCUSSION

**A.    Plaintiff's Symptom Testimony**

While Plaintiff has not challenged the ALJ's finding that Plaintiff was not entirely credible, Tr. 24, the Court finds the ALJ's adverse credibility determination significant in this case.

The ALJ indicated the following reasons for finding Plaintiff not fully credible: Plaintiff's treatment records are sparse with no treatment for almost two years after the alleged onset date and significant gaps in treatment thereafter, and it appeared Plaintiff stopped treatment in 2012 after he could not convince his doctor to say he was disabled, contradicting his assertion he was not seeking treatment due to a lack of funds (*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (in assessing a claimant's credibility, an ALJ properly relies upon unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment)); Plaintiff has not been compliant with following recommended treatment which could improve his level of functioning (*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noncompliance with medical care cast doubt on a claimant's subjective complaints)); Plaintiff has not sought any type of treatment for his alleged anxiety or depression (*Tommasetti*, 533 F.3d at 1039); and Plaintiff's activities of daily living have been greater than he has alleged in connection with his application for benefits, including evidence indicating Plaintiff engaged in work-like activity during the relevant period (20 C.F.R. §§ 404.1571,
///

416.971 (employment "during any period" of claimed disability may be probative of a claimant's ability to work)). Tr. 24-29.

The rationale provided by the ALJ is fully supported by the record, and the ALJ's determination that Plaintiff's statements were not entirely credible is uncontested by Plaintiff. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (issues not specifically and distinctly contested in a party's opening brief are considered waived). Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to Plaintiff's description of limitations and subjective complaints.

### B. Frank Rosekrans, Ph.D.

Plaintiff asserts the ALJ erred by failing to accord proper weight to the opinions of Dr. Rosekrans. ECF No. 15 at 12.

If the opinion of an examining medical professional is not contradicted, it can only be rejected with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding an examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, the examining opinion of Dr. Rosekrans was contradicted by other medical sources, including examiner Robert L. Quackenbush, Ph.D., the medical expert, and a state agency reviewing medical professional, *see infra*; therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting Dr. Rosekrans' report.

///

On May 5, 2014, Dr. Rosekrans completed a Psychological/Psychiatric Evaluation form. Tr. 347-351. Dr. Rosekrans diagnosed mild neurocognitive disorder due to traumatic brain injury and an adjustment disorder with mixed anxiety and depressed mood. Tr. 348. Dr. Rosekrans indicated there was nothing unusual or noteworthy about Plaintiff's appearance, Plaintiff's speech was normal, Plaintiff gave appropriate answers and did not digress excessively, Plaintiff was pleasant and cooperative, and Plaintiff's affect was normal. Tr. 350. Dr. Rosekrans nevertheless opined that Plaintiff was markedly impaired in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. Tr. 349.

The ALJ assigned "little weight" to Dr. Rosekrans' opinion, concluding there was no objective medical evidence to support the marked limitations and the marked limitation findings were not substantiated by Dr. Rosekrans' narrative report. Tr. 30.

With regard to the weight of the evidence of record, Joseph Cools, Ph.D., testified as a medical expert at the November 13, 2014 administrative hearing and was accorded significant weight by the ALJ. Tr. 29, 41-50. Dr. Cools indicated there was no evidence in the narrative portion of Dr. Rosekrans' report to indicate marked difficulties in completing a normal workday, maintaining regular attendance and being punctual; there was no evidence of behavior issues; and the finding that Plaintiff had marked difficulty in being able to communicate and perform effectively in a work setting was not consistent with Plaintiff's noted communication skills. Tr. 47-48, 49.

Dr. Cools opined that Plaintiff could perform simple to semi-complex tasks; would do best in a calm, non-noisy environment; would need repetition to learn

tasks and no strict production requirements; could get along with coworkers and supervisors, but no extended contact with the public; and could maintain a regular work schedule. Tr. 48-50. Consistent with Dr. Cools, State Agency psychological consultant, Renee Eisenhauer, Ph.D., opined that Plaintiff was no greater than moderately limited in any individual category of mental functioning. Tr. 29, 120-122.

On January 8, 2013, Dr. Quackenbush, completed a psychological evaluation, which the ALJ accorded "significant weight." Tr. 30, 327-333. Plaintiff reported no significant medical or physical concerns prior to the March 2012 bicycle accident and denied any background of mental health problems or treatment. Tr. 328. Dr. Quackenbush noted Plaintiff presented a few minutes late for his appointment, but had telephoned prior to his arrival indicating his transportation was running late. *Id*. At the conclusion of the examination, Plaintiff was observed entering a vehicle and driving away despite reporting friends had transported him to the office. Tr. 328. Dr. Quackenbush also observed Plaintiff's hands were suggestive of recent labor (e.g., grease or soil under the nails, etc.). *Id*.

Dr. Quackenbush indicated that while Plaintiff was clearly distractible and displayed occasional response latencies and word-finding problems, Plaintiff made good eye contact, was appropriately oriented, and exhibited no signs of a formal thought disorder, Plaintiff's speech was of normal volume, rate and rhythm, and Plaintiff's stream of thought was logical and based in reality. Tr. 328. Cognitively, Plaintiff appeared to be of average intelligence, his recent and remote memory appeared grossly intact, and he exhibited fair judgment and reasoning. Tr. 328-329. It was noted that Plaintiff interacted appropriately and communicated effectively with the examiner throughout the exam. Tr. 329.

Dr. Quackenbush opined that Plaintiff functions within the low-average range relative to his peers. Tr. 330. He found mild to moderate cognitive problems, but indicated the extent of Plaintiff's physical limitation was uncertain

and perhaps exaggerated. Tr. 330. Dr. Quackenbush determined Plaintiff was capable of learning simple to detailed information with adequate repetition and capable of making simple work-related judgements. Tr. 331.

As concluded by the ALJ, the objective medical evidence does not support Dr. Rosekrans' assessed marked limitations. Specifically, there is no objective evidence of Plaintiff's inability to maintain attendance or appropriate behavior. Although Plaintiff presented a few minutes late for his appointment with Dr. Quackenbush, Plaintiff sensibly called the office prior to his arrival to indicate he was running late. Tr. 328. In terms of Plaintiff's behavior, the record reflects Plaintiff has consistently interacted appropriately. Tr. 329, 350. With respect to Plaintiff's ability to communicate, the record reflects some occasional word-finding issues, Tr. 328; however, it is noted that Plaintiff interacted and communicated effectively with examiners, Tr. 329, 350. The ALJ accounted for the noted word-finding problems by restricting Plaintiff to simple and repetitive well-learned tasks. Tr. 30.

Furthermore, as noted by the ALJ, the narrative portion of Dr. Rosekrans' report does not provide a basis for his marked limitation findings. Tr. 30, 347-351; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible). As to Plaintiff's ability to maintain attendance, there is no indication Plaintiff was late to the appointment with Dr. Rosekrans, nor is there any mention of Plaintiff's inability to maintain a schedule in the report. With respect to Plaintiff's behavior, Dr. Rosekrans indicated Plaintiff was pleasant and cooperative, Tr. 350, and did not cite any behavioral issues. Regarding Plaintiff's ability to communicate, Dr. Rosekrans did not note any observed word finding issues, other than mentioning Plaintiff's self-report of word-finding difficulties. Tr. 347. To the contrary, Dr. Rosekrans indicated Plaintiff gave appropriate answers and did not digress excessively. Tr. 350.

The marked limitations assessed by Dr. Rosekrans are not supported by the weight of the record evidence which demonstrates Plaintiff is capable of performing simple and repetitive well-learned tasks with ordinary production requirements in a non-noisy environment with only occasional brief contact with coworkers and the general public. Tr. 23, 48-50, 331. The narrative portion of Dr. Rosekrans' report additionally does not corroborate his marked limitation findings. Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounted Dr. Rosekrans' report. Accordingly, the ALJ did not err by rejecting Dr. Rosekrans' assessed marked limitations.

**C.    Severe Impairment**

Plaintiff contends the ALJ also erred by failing to find Plaintiff's diagnosed adjustment disorder with mixed anxiety and depressed mood was a severe impairment. ECF No. 15 at 14-15; ECF No. 21 at 5-6.

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Plaintiff has the burden of proving he has a severe impairment. 20 C.F.R. §§ 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows he is disabled. 20 C.F.R. § 416.912(a). In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. S.S.R. 96-4p.

In this case, Plaintiff claimed "mental health" as a condition that limited his ability to work on his disability form. Tr. 221. When asked about his mental health at the administrative hearing, Plaintiff testified he would like to say he did not have depression, but he does. Tr. 66. Plaintiff, however, did not elaborate

other than to indicate there were a lot of things related to the injury he sustained as a result of the March 2012 bicycle accident. *Id*. He did not mention anxiety, and he did not discuss any symptoms related to depression or anxiety. Tr. 66.

Although Drs. Quackenbush and Rosekrans each diagnosed an adjustment disorder with mixed anxiety and depressed mood, Tr. 331, 348, the mere existence of an impairment is insufficient proof of a severe impairment. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001) (a claimant must prove an impairment affects his ability to perform basic work activities). Neither doctor discussed functional limitations from the diagnosed adjustment disorder with mixed anxiety and depressed mood. Moreover, Dr. Quackenbush indicated that Plaintiff was pleasant to work with throughout the examination and indicated Plaintiff's comments regarding anxiety may have been exaggerated, Tr. 331, and Dr. Rosekrans noted Plaintiff's attitude and behavior as "pleasant and cooperative" and his mood as "positive," Tr. 350.

In any event, Plaintiff has failed to specify any functional limitations from these diagnoses that were not accounted for in the ALJ's RFC determination. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). Accordingly, the ALJ correctly found at step two of the sequential evaluation process that Plaintiff's adjustment disorder with mixed anxiety and depressed mood did not result in more than minimal limitation to his ability to perform work activity and, therefore, was not a severe impairment. Tr. 27-28.

**D.     Physical RFC Determination**

Plaintiff argues that based on his testimony, the ALJ should have determined he was limited to sedentary exertion level work or less, not light exertion level work. ECF No. 15 at 16-17.

As discussed in Section A, Plaintiff was properly found by the ALJ to be not entirely credible, and Plaintiff does not contest this credibility determination. *See infra*. Given the ALJ's adverse credibility determination, the ALJ appropriately

accorded little weight to Plaintiff's description of functional limitations and subjective complaints.

Plaintiff's assertion that the Court should rely solely on his discredited testimony to conclude the ALJ erred by finding him capable of light exertion level work is without merit.

### E. Step Five

Plaintiff contends that the ALJ erred by relying on the vocational expert's testimony in response to a hypothetical not supported by the weight of the record evidence. ECF No. 15 at 15-16.

As determined above, the weight of the record evidence in this case supports the ALJ's findings at step 2 and the ultimate RFC determination.

The ALJ determined Plaintiff could perform light exertion level work with the following limitations: he is able to lift 20 pounds occasionally and 10 pounds frequently, and he is able to push and pull with the upper extremities up to these weight limits; he needs to avoid overhead reaching bilaterally; he is able to sit for six hours and stand/walk for six hours in an eight hour workday; he needs to be able to change positions once per hour; he is not able to climb ladders, ropes, or scaffolds but can occasionally climb stairs and ramps; he needs to avoid concentrated exposure to vibrations, work at unprotected heights, and loud noises; he can perform simple and repetitive well-learned tasks up to three steps; he can have ordinary production requirements; and he can have occasional brief contact with coworkers and the general public. Tr. 23.

At the administrative hearing held on November 13, 2014, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of office cleaner one and mail clerk. Tr. 68-69. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, Plaintiff's argument is without merit.

### F. New Assertion in Reply Brief

Plaintiff additionally identified and argued a new issue in his reply brief: the ALJ failed to consider the effect of Plaintiff's March 20, 2014 fall which resulted in a fracture of the right acetabulum.[2] ECF No. 21 at 1-2.

Our circuit has repeatedly admonished that the Court should not consider any claims not actually argued in an appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Rather, the Court should "review only issues which are argued specifically and distinctly in a party's opening brief." *Id.*; *Paladin Assocs., Inc.*, 328 F.3d at 1164 (issues not specifically and distinctly contested in a party's opening brief are considered waived).

Because Plaintiff failed to provide the foregoing argument in his opening briefing, the Court declines to consider the issue.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

///
///
///
///

---

[2]It is significant to note that the ALJ concluded Plaintiff's right acetabular fracture was a severe impairment at step two of the sequential evaluation process. Tr. 22. It thus appears the right acetabular fracture was properly considered by the ALJ when evaluating Plaintiff's residual functional capacity in this case.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED September 26, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE